### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SCHOENMANN PRODUCE COMPANY, INC., *et al.*, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. H-07-1776 |
| BNSF RAILWAY COMPANY, Defendant. | § § § | |

### MEMORANDUM AND ORDER

Pending before the Court is a Motion to Strike and Exclude Expert Testimony of Patrick Brecht [Doc. # 37] ("Plaintiffs' Motion") filed by Plaintiffs Schoenmann Produce Co., Inc., and Farming Technology, Inc.[1] BNSF has similarly filed a Motion to Strike Plaintiffs' Expert Witness Designation of Robert E. Thornton, Ph.D. [Doc. # 39] ("BNSF's RET Motion") and a Motion to Strike Plaintiffs' Expert Witness Designation of Robert K. Thornton, Ph.D. [Doc. # 40] ("BNSF's RKT Motion") (collectively "BNSF's Motions").[2] Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that Plaintiffs' Motion should be **granted in part** and **denied in part** and BNSF's Motions should be **granted in part** and **denied in part**.

---

[1]     Defendant BNSF Railway Company ("BNSF") has responded [Doc. # 46].

[2]     Plaintiffs have responded to both motions [Doc. # 47], and BNSF has replied [Doc. # 49].

P:\ORDERS\11-2007\1776MStrike.wpd   090529.1659

## I.   GENERAL FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this case has been set forth fully in the Court's prior opinions. Briefly, during the summer of 2006, Plaintiffs contracted with BNSF for the transportation and delivery of approximately 140 shipments of potatoes in refrigerated railcars from Bakersfield, California, to Plaintiffs' processing facility in Houston, Texas. Thirty-three of these shipments arrived in Houston in materially damaged condition. Plaintiffs allege *inter alia* that the damage resulted from the failure of the refrigeration units on BNSF's railcars to function properly. By Memorandum and Order on May 7, 2009, the Court denied BNSF's motion for partial summary judgment.[3]

Plaintiffs here seek to exclude the testimony of BNSF's expert, Patrick Brecht ("Brecht"). BNSF seeks to exclude the testimony of both of Plaintiffs' experts, Robert E. Thornton ("RET") and Robert K. Thornton ("RKT"). The motions have been fully briefed and are ripe for decision.

## II.   GENERAL STANDARD FOR EXCLUSION OF EXPERT WITNESS

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the

---

[3]    BNSF sought summary judgment on twenty-four of the thirty-three claims as issue in the case. *See* Memorandum and Order [Doc. # 52].

testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.  The district court is required to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [reliability] and of whether that reasoning or methodology can be applied to the facts at issue [relevance]." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993)).  This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Id.* at 617–618 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 151.  The Court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

The proponent of the expert testimony "must prove by a preponderance of the evidence that the testimony is reliable." *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d

567, 581 (5th Cir. 2001) (citing *Tanner v. Westbrook*, 174 F.3d 542, 547 (5th Cir.1999)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 812 (2000).

### III.   BNSF'S EXPERT:  PATRICK BRECHT

BNSF has designated Brecht as its expert on causation and the standard of care for shipping bulk potatoes.  Plaintiffs challenge Brecht's expert qualifications and nine of his specific opinions.

#### A.   Brecht's Qualifications Generally

Brecht has a Ph.D. from the University of California in plant physiology with emphasis in postharvest biotechnology.  Brecht has approximately thirty years experience in the handling, storage, and transportation of perishable products, including potatoes.  Brecht has written extensively on the refrigerated transport of perishable goods.  While most of Brecht's published work relates to refrigerated trailer transport issues, Brecht has testified that the issues in refrigerated rail transport and refrigerated trailer transport are equivalent.  The Court concludes on the basis of Brecht's extensive experience and education that he is generally qualified to render most of the opinions contained in his expert report.

## B.    Brecht's Opinions

Plaintiffs challenge nine of Brecht's opinions.  Plaintiffs' challenges fall into four general categories: (1) that Brecht's opinions are inherently speculative because he was unable to tie his opinions to specific railcars and rather expressed global opinions; (2) that Brecht is not qualified as an expert in potato physiology; (3) that Brecht is not qualified as an expert in the shipment of bulk potatoes; and (4) that Brecht's opinions would be misleading to the jury.  The Court has carefully reviewed Brecht's expert report, affidavits, supporting materials, and deposition testimony, using the *Daubert* rubric.  The Court concludes that, unless otherwise noted, Brecht used sufficiently reliable methods and data to reach his conclusions and his opinions are admissible at trial.

### 1.    Opinion No. 1[4]

Brecht's first opinion asserts that improper stowage contributed to short cycling, resulted in excessive heat buildup, and accelerated the deterioration and decay of the potatoes during transit.  Plaintiffs challenge the opinion regarding short cycling as speculative because Brecht was unable to identify specific railcars that suffered from short cycling problems.  Plaintiffs also challenge Brecht's ability to

---

[4]     Because Brecht did not number the opinions in his expert report, for purposes of clarity the
        Court adopts the numbering set forth in Plaintiffs' Motion.

qualifications to testify about the standard of care in the shipment of bulk potatoes.

Brecht testified that he "was unable to establish with certainty which [railcars] did or did not have [short cycling problems]."[5]  Accordingly, because he does not have a reasonable factual basis for doing so, Brecht will not be permitted to testify that the loading method caused deterioration of the potatoes in any specific railcar. However, Brecht will be permitted to testify, based on his prior experience, that improper loading can affect the proper operation of railcar refrigeration systems.

With respect to Plaintiffs' broader complaint that Brecht is not qualified to testify about the standard of care for the shipment of bulk potatoes, the Court is unpersuaded.  Brecht's experience and education qualify him to testify about how various methods of loading perishable goods, including bulk potatoes, into refrigerated transport can affect the condition of the goods during transit.

### 2.    Opinion No. 2

Brecht's second opinion asserts that mud blocked the floor in the railcars, resulting in incomplete refrigeration which accelerated the deterioration of the potatoes. Plaintiffs challenge this opinion as speculative because Brecht testified that he was unable to determine which specific railcars suffered from the mud problem.[6]

---

[5]    Deposition of Patrick Brecht, Exh. 2 to Plaintiffs' Motion [Doc. # 38], at 142.

[6]    *Id.* at 140.

The Court agrees. Brecht cannot testify that mud caused deterioration of the potatoes in any specific car because he does not have a reasonable factual basis for doing so. However, Brecht will be permitted to testify, based on his prior experience, that mud is a factor that can affect the proper operation of railcar refrigeration systems.

### 3.    Opinion No. 3

Brecht's third opinion is that commingling soft rot infected potatoes in the railcar shipments caused extensive and serious deterioration of those potato shipments.    Plaintiffs challenge this opinion on the grounds that Brecht is not qualified to testify as an expert in potato physiology.  Defendant BNSF persuasively responds that Brecht, an expert in the refrigerated transportation of perishable goods, must have an understanding of the physiology of the perishable goods in order to determine how to keep the specific goods from being damaged during transport. Plaintiffs' own corporate representative, Matthew Carroll, similarly testified that under certain conditions, soft rot can spread to non-infected potatoes, making this opinion of Brecht largely uncontroverted.  Brecht will be permitted to testify, based on his prior experience with perishable goods, including potatoes, that commingling infected perishable goods shipments can cause deterioration of the goods in transit.

On the other hand, Brecht will not be permitted to testify that the commingling caused deterioration of the potatoes in any specific railcar because he does not have

a reasonable factual basis for such an opinion.

### 4.  Opinions No. 4 and 5

Brecht's fourth and fifth opinions assert that railcars are not designed to act as forced air precoolers and that Plaintiffs' failure to precool the potatoes contributed in large part to the soft rot deterioration problem.  Plaintiffs challenge these opinions on the ground they would be misleading to the jury because they are contrary to the terms of the Confidential Quote, the parties' contract, which provided that Plaintiffs were not required to precool the potatoes to the waybill temperature.  The Court disagrees.  The parties' contract provisions do not govern the admissibility of Brecht's opinion on possible causes for the damage to the potatoes in issue.[7]  Brecht accordingly is permitted to testify that railcars are not designed to act as forced air precoolers.  Brecht may testify, based on his prior experience, about the effects of loading perishable goods above the waybill temperature.  He will not be permitted, however, to testify that the failure to precool caused deterioration of potatoes in any specific car because he does not have a reasonable factual basis for doing so.

### 5.  Opinion No. 7

Brecht's seventh opinion asserts that Plaintiffs' delay in taking delivery of the potatoes exacerbated the amount of damages to the potato shipments.  Plaintiffs

---

[7]  The Confidential Quote provisions, of course, are pertinent to the issue of liability, *i.e.*, whether there was a breach of contract.

8

challenge this opinion as speculative because Brecht was unable to determine the degree to which any particular shipment further deteriorated as a result of such a delay. Brecht testified that he attempted to, but could not, determine the amount by which particular shipments further deteriorated because of such a delay.[8] Accordingly, Brecht may testify, based on his prior experience, that delay in taking delivery can exacerbate the damage to perishable goods, but may not testify about whether delay in taking delivery caused potato deterioration in any specific railcar.

### 6.    Opinion No. 10

Brecht's tenth opinion asserts that the growing conditions, pulp temperature at harvest, mechanical damage and poor field and storage sanitation were most likely the primary cause of the soft rot infection. Plaintiffs challenge this opinion on the ground that Brecht is not qualified as an expert in potato physiology. As discussed previously, Brecht has adequate qualifications to testify regarding potato physiology. Brecht will be permitted to testify as to this opinion.

### 7.    Opinion No. 11

Brecht's eleventh opinion asserts that the accuracy and reliability of the temperature tapes[9] is questionable because of the absence of the manufacturer's

---

[8]    Deposition of Patrick Brecht, Exh. 2 to Plaintiffs' Motion [Doc. # 38], at 172–3.

[9]    The temperature tapes are temperature recording devices that were placed in the railcars at issue.

calibration certificate and the location of the temperature recorders in the railcars. Plaintiffs challenge this opinion as speculative because Brecht was unable to identify any temperature recording device in any particular railcar that was inaccurate. BNSF responds that this opinion applies to every railcar at issue and, therefore, identification of specific temperature recording devices with problems is unnecessary. The Court agrees with BNSF. Brecht is permitted to testify as to this opinion.

### 8.      Opinion No. 12

Brecht's twelfth opinion is that Plaintiffs submitted insufficient information to substantiate the fair market value of the alleged lost goods. It is the role of the Court to determine whether sufficient information has been submitted and, if so, it is for the jury to decide Plaintiffs' damages (*i.e.*, what the bulk price of the potatoes is). Brecht has not established qualifications to opine on the fair market value of bulk potatoes and he is not permitted to give such an opinion at trial. However, because the Court is not clear on Brecht's qualifications in this regard, BNSF will be given the opportunity at trial (outside the presence of the jury (*see* FED. R. CIV. P. 104)) to clarify his experience in regard to potato bulk sales and the Court then will determine if Brecht may testify about the method he suggests is appropriate to quantify the damage in a load.

## IV.   PLAINTIFFS' EXPERTS: ROBERT E. THORNTON AND ROBERT K. THORNTON

Plaintiffs have designated both Robert E. Thornton ("RET") and Robert K. Thornton ('RKT") as fact and expert witnesses.[10] However, Plaintiffs also state that neither RET nor RKT has been retained specifically to act as an "expert" in the case and, therefore, that an expert report was not required to be presented by either RET or RKT. Rather, Plaintiffs assert that RET and RKT were regularly engaged year after year "in the ordinary course of business for routine potato growing, harvest and handling issues, were not specifically engaged for purposes of providing expert testimony and do not regularly testify for Plaintiffs, and Plaintiffs provided express notice of this fact in the designations."[11] BNSF challenges Plaintiffs' failure to provide expert reports and also challenges the qualifications and methodology of RET's and RKT's opinions.

Under Federal Rule of Civil Procedure 26(a)(2)(B), a party's required witness disclosure "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B). If a party fails to provide

---

[10]     Plaintiffs' Designation, Exh. 1 to BNSF's RET Motion [Doc. # 39].

[11]     Plaintiffs' Response [Doc. # 47], at 2.

information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The Court concludes that Plaintiffs' failure to provide expert reports for both RET and RKT was not substantially justified. As agricultural consultants, RET and RKT primarily gave advice to Plaintiffs on growing and harvesting issues, not transportation issues. Many of the topics on which RET and RKT seek to opine are outside the ordinary scope of their employment with Plaintiffs.[12] Contrary to Plaintiffs' assertions, both RET and RKT are retained experts under Rule 26(a)(2)(B) on transport issues. Their testimony plainly falls within the written report requirement of Rule 26(a)(2)(B).

While Plaintiffs' failure to provide expert reports was not substantially justified, the prejudice to BNSF is mitigated to a great extent by BNSF's opportunity to fully depose both RET and RKT. Accordingly, the Court exercises its discretion under Rule 37(c)(1) to decline to preclude RET or RKT from testifying at trial. RET and RKT will be permitted to testify to the extent that they gave explanations of their opinions in their respective depositions, unless otherwise noted below. Neither

---

[12]   The Court does not reach the issue of whether a party that retains an outside consultant for certain purposes and later requests that he testify to professional opinions within his retention means that the expert need not provide a Rule 26 report.

witness will be permitted to testify to any opinions or subjects not addressed in his deposition.[13] The Court now turns to BNSF's challenges to the qualifications and methodology of RET's and RKT's opinions.

## A.     Robert E. Thornton

Plaintiffs' Designation of Expert Witnesses indicates that RET will testify to:

(1) the propriety of the method of loading potatoes from the field into refrigerated rail cars without being precooled;

(2) the effect of loading potatoes without precooling;

(3) the deterioration, if any, resulting from the failure to precool as opposed to deterioration resulting from transportation in railcars lacking appropriate refrigeration;

(4) the ultimate cause of damage to the potatoes at issue being the mechanical failure of the refrigeration units;

(5) the different conditions that effect [sic] potatoes; and

(6) the life cycle of potatoes, specifically including the breakdown of potatoes that are properly stored and cooled.[14]

---

[13]     This ruling does not apply to facts or events that RET or RKT personally observed, which matters are lay witness testimony not covered by the written report requirement of Rule 26(a)(2)(B).

[14]     *See* Plaintiffs' Designation of Expert Witnesses, Exh. 1 to BNSF's RET Motion [Doc. # 39], at 2.

BNSF challenges RET's qualifications to testify regarding the handling and shipping potatoes by rail and the opinions regarding deterioration of those shipments. BNSF does not challenge the methodology, if any, employed by RET in reaching his opinions. Plaintiffs respond to BNSF's objections by stating that RET is "qualified by knowledge, skill, experience, training and education to provide opinion testimony with respect to harvesting, handling and physiology of potatoes."[15]   Plaintiffs accordingly concede that RET is not qualified to testify regarding transportation issues. He will not be permitted to give at trial transportation-related opinions (Opinions nos. 1, 2, 3 and 4), regardless of whether the topic was discussed at his deposition. RET's years of experience in the growing and harvesting of potatoes in and of itself does not qualify him to offer expert testimony on potato transportation issues. *See Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). RET is, however, generally qualified to render opinions regarding potato physiology, including different conditions that affect potatoes, and he is permitted to testify to this effect (Opinions nos. 5 and 6).

## B.   Robert K. Thornton

Plaintiffs' Designation of Expert Witnesses indicates that RKT will testify to:

(1)   the propriety of loading potatoes directly from fields into

---

[15]   Plaintiffs' Response [Doc. # 47], at 10.

refrigerated railcars without being precooled;

(2)  the effect of loading potatoes without precooling;

(3)  the deterioration, if any, resulting from the failure to precool as opposed to deterioration resulting from transportation in railcars lacking appropriate refrigeration;

(4)  the ultimate cause of damage to the potatoes at issue being the mechanical failure of the refrigeration units;

(5)  the period of time the variety of potatoes in question can be stored without damage or deterioration; and

(6)  the difference between USDA inspection based on condition and USDA inspection based on quality.[16]

BNSF challenges RKT's qualifications to render these opinions.  Plaintiffs respond to BNSF's objections by stating that RKT is "qualified by knowledge, skill, experience, training and education to testify with regard to issues pertinent" to Plaintiffs' claims.  The Court has carefully reviewed RKT's witness designation, affidavits, supporting materials, and deposition testimony under the *Daubert* analysis. There is no evidence that RKT's experience and education qualify him as an expert in refrigeration or transportation of produce, including potatoes.  RKT therefore will

---

[16]  *See* Plaintiffs' Designation of Expert Witnesses, Exh. 1 to BNSF's RET Motion [Doc. # 39], at 3.

not be permitted to testify that the ultimate cause of damage to the potatoes at issue is the mechanical failure of the refrigeration units (Opinion nos. 1, 2, 3 and 4). RKT is, however, generally qualified to render opinions regarding potato physiology, including both pre- and post-harvest issues, and including the process by which potatoes decay, and he is permitted to testify to this effect (Opinion no. 5). Because the Court is not clear on RKT's qualifications with respect to Opinion no. 6, BNSF will be given the opportunity at trial (outside the presence of the jury (*see* FED. R. CIV. P. 104)) to clarify his experience in this regard and the Court then will determine if RKT may testify as to this opinion.

## V.   **CONCLUSION AND ORDER**

For all the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion [Doc. # 37] is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that BNSF's RET Motion [Doc. # 39] is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that BNSF's RKT Motion [Doc. # 40] is **GRANTED IN PART** and **DENIED IN PART**.

SIGNED at Houston, Texas, this **29th** day of **May, 2009**.

Nancy F. Atlas
United States District Judge